**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| ARCHER WESTERN – DE MOYA JOINT VENTURE<br><br>  Plaintiff,<br><br>v.<br><br>ACE AMERICAN INSURANCE CO.<br><br>  Defendants. | Case No.: 1:22-cv-21160-FAM |

### ACE AMERICAN INSURANCE COMPANY'S REPLY TO STATEMENT OF ADDITIONAL MATERIAL FACTS

NOW COMES Defendant, ACE American Insurance Company ("ACE"), pursuant to Federal Rule of Civil Procedure 56 and S.D. Fla. Local Rule 56.1(b)(3)(B), submits this Reply to Plaintiff's Statement of Additional Material Facts.

### Prefatory Notations

To avoid redundance throughout, ACE take takes this opportunity to address several instance where it disputes Plaintiff purported "fact" on the grounds that they are not supported by amissible evidence. "On motions for summary judgment, a court may consider only that evidence which can be reduced to an admissible form." *Snover v. City of Starke*, Fla., 398 Fed.Appx. 445, 449 (11th Cir.2010) (internal quotations and citations omitted). "Authentication is a condition precedent to admissibility." *Id*. Furthermore, Federal Rule of Evidence 56(c)(4) provides that, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Here, Plaintiff's Statement of Facts repeatedly fails cite admissible evidence in support of the "facts" alleged therein. Ms. Kozdrey's attorney affidavit is not made upon personal knowledge, and does not reduce the documenst

1

attached thereto to an admissible form. Similarly, the testimony of Plaintiff's expert, Dr. Mat Radlinski is not admissible where he is simply provides hearsay regarding factual information that we obtain from Plaintiff's personnel.

## **Reply Statement of Material Facts**

50. Undisputed.

51. Disputed. ACE objects to this purported "fact" on the grounds that the Policy, which is a written contract, is the best evidence of its terms, conditions, provisions, definitions, limitations, exclusions, endorsements and limits. ECF No. 87, Ex. 2. Introduction of parol or extrinsic evidence, such as this "fact" to aid in the interpretation of a contract is prohibited, unless the contract is ambiguous—which is it not. *Hashwani v Barbar*, 822 F2d 1038, 1040 (11th Cir 1987).

52. Disputed. ACE objects to this purported "fact" on the grounds that the Policy, which is a written contract, is the best evidence of its terms, conditions, provisions, definitions, limitations, exclusions, endorsements and limits. ECF No. 87, Ex. 2. The introduction of parol or extrinsic evidence, such as this "fact" to aid in the interpretation of a contract is prohibited, unless the contract is ambiguous—which is it not. *Hashwani*, 822 F2d 1040. Further, ACE avers that Policy Endorsement Number MS-61704 does not "expand" coverage whatsoever. Indeed, it is titled: "Excluded Causes of Loss." The Policy endorsement simply replaces a different, more limiting exclusion that would exclude loss to otherwise non-defective property that resulted from defective materials, workmanship, etc. ECF No. 87, Ex. 2 at 35. Policy Endorsement Number MS-61704 still excludes coverage such materials that contain defects. *Id*.

53. Disputed. See response to No. 52, above.

54. Disputed. ACE objects to this purported "fact" on the grounds that it is irrelevant to the interpretation and application on the subject Policy endorsement. Further, ACE denies that it charged additional premium, and contents that Plaintiff has presented no admissible evidence demonstrating otherwise. The exhibits cited by Plaintiff reference an increased deductible, which is wholly distinct from an increased premium. There is no record evidence of an increased premium.

55. Disputed. This purported "fact" seemingly related to a separate framework collapse claim, which is addressed in more detail below. ACE objects on the grounds that it's the framework collapse claim involved a key distinction—there was an actual event of physical damage—and contents that coverage in the framework collapse claim is irrelevant here.

ACE further objects to this purported "fact" on the grounds that the subject the Policy, which is a written contract, is the best evidence of its terms, conditions, provisions, definitions, limitations, exclusions, endorsements and limits. ECF No. 87, Ex. 2. Introduction of parol or extrinsic evidence, such as this "fact" to aid in the interpretation of a contract is prohibited, unless the contract is ambiguous—which is it not. *Hashwani,* 822 F2d at 1040.

Finally, with respect to the framework collapse claim, ACE disputes the contention that the Policy's so-called LEG 3 endorsement provided coverage for the cost of repairing defective work, design, and/or material. Indeed, its letter to Plaintiff expressly stated: "This letter related to the formwork collapse claim, and the entire quotation reads: "*This is to advise you that because the cause of loss has been preliminarily attributed to faulty design and workmanship the costs associated with improving the original form design, workmanship, or material **are excluded from coverage***. (emphasis added). Kozdrey Decl. Ex. U.

56. Undisputed.

57. Disputed. ACE objects to this purported "fact" on the grounds that the Policy, which is a written contract, is the best evidence of its terms, conditions, provisions, definitions, limitations, exclusions, endorsements and limits. ECF No. 87, Ex. 2. Introduction of parol or extrinsic evidence, such as this "fact" to aid in the interpretation of a contract is prohibited, unless the contract is ambiguous—which is it not. *Hashwani*, 822 F2d at 1040. ECF No. 87, Ex. 2.

58. Disputed. Plaintiff has presented no admissible evidence that the cement and fly ash each in a satisfactory state before being mixed together.

59. Disputed. Plaintiff has presented no admissible evidence regarding how it produced concrete for the Project.

60. Disputed. Plaintiff has presented no admissible evidence regarding an alleged clog within a pressure relief valve. Indeed, the only witness to testify on this matter testified that he has no personal knowledge or observation. ECF No. 87, Ex. 3 at 208:12-209:17.

61. Disputed. Plaintiff has presented no admissible evidence regarding an alleged failure of a pressure relief valve, nor its theory that "the fly ash silo became over pressurized and forced excess fly ash into the raw cement silo." Indeed, the only witness to testify on this matter testified that he has no personal knowledge or observation. ECF No. 87, Ex. 3 at 52:7-22.

62. Disputed. ACE objects to the undefined use of the term "contaminated" and contends that cement fly ash does not "damage" cement (i.e. it does not chemically or physically alter cement). ECF No. 87, Ex. 4 at 262:12 to 262:24. Moreover, Plaintiff has cited to no admissible evidence of "excess" fly ash in the concrete mixes.

63. Disputed. Plaintiff has cited to no admissible evidence of "excess" fly ash in the concrete mixes. Moreover, contrary to Plaintiff's assertions, its own expert Dr. Radlinski testified

that fly ash does not "damage" cement (i.e. it does not chemically or physically alter cement). ECF No. 87, Ex. 4 at 262:12 to 262:24.

64. Disputed. The subject concrete was defective, not damaged. Indeed, even assuming Plaintiff's excessive fly as theory to be true, its expert Dr. Radlinski testified that fly ash does not "damage" cement (i.e. it does not chemically or physically alter cement). ECF No. 87, Ex. 4 at 262:12 to 262:24.

65. Disputed. Plaintiff's claim is limited to defective concrete elements, none of which had been incorporated into a highway infrastructure. **Ex. A**, Plaintiff's September 27, 2023 email, attached hereto.

66. Disputed. Plaintiff has presented no evidence of damage to adjacent concrete forms, rebar, or other structural steel, which were allegedly encapsulated by defective concrete. There is also no evidence cited that the alleged "other property" was, in fact, "other property" as opposed to an impermissible attempt to bifurcate a final product into component parts.

Moreover, the inadmissible documents that Plaintiff cites to support this "fact" is totally incomprehensible. Plaintiff cites to page in Mr. Nassar deposition transcript (p.265) that does not exists. Further, the referenced "cost submissions" do not accurately reflect Plaintiff's claim. For example, in support of "Pier 3" damages, Plaintiff cites to ECF No. 94-26. This document is titled "Bridge 101 Pier 3 (Additional Piles 3-1 and 8-1)." But per Ex. A., Plaintiff's claim for "Pier 3" elements is limited to Pier 3, Pile 4 and Pier 3, Pile 7. Nowhere does this cited "cost submission" document reference Pier 3, Pile 4 and Pier 3, Pile 7. The only elements stated, Piles 3-1 and 8-1, are not event part of Plaintiff's claim.

67. Disputed. ACE objects to the undefined use of the term "contamination" and contents that fly ash does not "damage" cement (i.e. it does not chemically or physically alter

5

cement). ECF No. 87, Ex. 4 at 262:12 to 262:24. Moreover, Plaintiff has presented no admissible evidence regarding an alleged valve failure. Indeed, the only witness to testify on this matter testified that he has no personal knowledge or observation. ECF No. 87, Ex. 3 at 208:12-209:17.

68. Disputed. Plaintiff has presented no admissible evidence regarding an alleged clog within a pressure relief valve, nor what it purports to have done to "repair" is or alter the configuration of its cement batch plant. Plaintiff cites only to the testimony of its expert witness, who has no personal knowledge of these alleged "facts," and to an unauthenticated and incomprehensible white board photo. ECF No. 87, Ex. 4 at 15:19-25.

69. Disputed. Plaintiff notified ACE of a separate claim -- a formwork collapse – on October 2, 2020 (Plaintiff's stated date is incorrect).

70. Undisputed. However, ACE contends that the referenced Formwork Loss involved a formwork collapsed—it did not simply "buckle."

71. Disputed. ACE objects to this purported "fact" on the ground that its investigation into a separate and distinct collapse claim is irrelevant to the issues here. Nevertheless, ACE contents that it paid this claim, and concrete materials sampling was unnecessary in light of the collapse event.

72. Disputed. Plaintiff has presented no admissible evidence regarding an alleged valve malfunction. Indeed, the only witness to testify on this matter testified that he has no personal knowledge or observation. ECF No. 87, Ex. 3 at 208:12-209:17. Further, Plaintiff has presented no admissible evidence that the claimed Project elements contained excessive amounts of fly ash. See Radlinski Report, Kozdrey Decl. Ex. A,     1 at p.14 (showing fly ash content for just 5 of 17 project elements, two of which met specification of 20-30%). Moreover, one of the samples that testing "high" for fly ash met compressive strength specifications. *Id*, Element 4-12-

9U tested at 9340 psi. Finally, ACE objects to the undefined use of the term "contamination," contends that cement fly ash does not "damage" cement (i.e. it does not chemically or physically alter cement). ECF No. 87, Ex. 4 at 262:12 to 262:24.

ACE does not dispute that, at the time of the formwork collapse, it was unaware that Plaintiff would be making a separate claim for defective concrete in Project elements that had not sustained physical damage.

73. Disputed. On March 25, 2021, Plaintiff submitted notice of the subject defective concrete claim, but it was not a "supplemental tender." Complaint, ECF No. 1 at 7, ¶42.

74. Disputed to the extent that Plaintiff characterizes its March 25, 2020 notice of the subject defective concrete claim as a "supplemental." Otherwise undisputed.

75. Disputed. ACE did not have an opportunity to inspect project elements, which had been discarded, along with any relevant samples. **Ex. B**, Deposition of Robert Haukohl at 48:3 – 49:14, attached hereto.

76. Undisputed.

77. Disputed. ACE objects to the implication that formwork collapse claim and the current concrete defect claim are a "single claim." The formwork claim involved a collapse, which as paid for. ECF No. 94-3 at 107:4-21. The present concrete defect claim was subsequently noticed, and does not involved physical damage to non-defective property. Notwithstanding, the distinction is materially irrelevant for determining whether the defective concrete is covered or excluded under the Policy.

Further, Plaintiff has presented no admissible evidence regarding an alleged valve malfunction. Indeed, the only witness to testify on this matter testified that he has no personal knowledge or observation. ECF No. 87, Ex. 3 at 208:12-209:17. Finally, ACE objects to the

undefined use of the term "contamination," contends that cement fly ash does not "damage" cement (i.e. it does not chemically or physically alter cement). ECF No. 87, Ex. 4 at 262:12 to 262:24.

78. Undisputed.

79. Disputed. Plaintiff fails to provide proper context. The cited testimony of Mr. Trippel referred to the covered formwork collapse, not the subject defect concrete claim. The cited portion of Mr. Trippel's testimony expressly states: "*Q: So removing the rebar that was encased in the covered concrete **for this form loss** is a covered loss, it's a covered event **for the formwork claim**? A: It's my understanding that **for the formwork claim**, rebar was damaged in the course of removing hardened concrete.*" Kozdrey Decl. Ex. B at 149:25 – 150:6 (emphasis added). In the formwork claim there was a collapse, which renders it inapposite and irrelevant here.

80. Disputed. The documentation cited by Plaintiff does not address ACE's review of the present defective concrete claim. Kozdrey Decl. Ex. U is a letter form ACE addressing the formwork collapse only. Kozdrey Decl. Ex. V is off topic, and is just a diagram of the concrete batch plant, a photo of Plaintiff's white board, and a timeline of event created by Plaintiff.

81. Disputed. Plaintiff quotation of ACE's letter is incomplete, and attempts to frame ACE's position out-of-content. This letter related to the formwork collapse claim, and the entire quotation reads: "*This is to advise you that because the cause of loss has been preliminarily attributed to faulty design and workmanship the costs associated with improving the original form design, workmanship, or material **are excluded from coverage**. The reasonable costs associated with removing the hardened concrete from the original pour, repouring the concrete, repairing/ replacing damaged forms, and reinstalling the forms in the design that existed on the date of loss will be covered subject to the $250,000 deductible.*" (emphasis added). Kozdrey Decl. Ex. U. In

8

other words, the defective concrete was excluded, ACE found coverage because, in that case, there was a formwork collapse.  Again, the formwork claim is irrelevant here.

82. Undisputed.

83. Undisputed.

84. Disputed  To the contrary, Dr. Radlinski testified that fly ash does not "damage" cement (i.e. it does not chemically or physically alter cement).  ECF No. 87, Ex. 4 at 262:12 to 262:24.

85. Disputed on the grounds that Plaintiff has presented no admissible evidence regarding how, allegedly, excess fly ash got into the Project components.  And the opinion testimony of its expert witness, who has absolutely no percipient knowledge, is wholly inadmissible on this point.  Indeed, Dr. Radlinski testified that he conducted "limited investigation" in this regard, and that his related opinions are based on information provided by Plaintiff.  ECF No. 87, Ex. 4 at 10:13 – 16:4.

86. Disputed. Dr. Radlinski purports to have considered other causes of weakened concrete, but testified that his conclusions were "inconclusive." ECF No. 87, Ex. 4 at 44:10-15. ("…as I said earlier, -- my -- my findings are inconclusive regarding the -- exactly how fly ash was -- excessive amounts of fly ash and -- and insufficient amounts of cement were -- ended up -- ending up in the -- in those concrete batches.").

87. Disputed. Plaintiff has presented no admissible evidence regarding the cause of low strength and delayed hardening of concrete.  Indeed, Plaintiff cites only to a page form Dr. Radlinski report, but Dr. Radlinski has admitted that he conducted a "limited investigation," and that his related opinions are based on information provided by Plaintiff.  ECF No. 87, Ex. 4 at

9

10:13 – 16:4. Plaintiff did not, itself, investigate or eliminate any other causes of lower-than expected compressive strength concrete. ECF No. 87, Ex. 3 at 152:20 to 155:1.

88. Disputed. Plaintiff has presented no admissible evidence to confirm what caused the subject concrete's low compressive strength.

89. Disputed. ACE objects to this purported "fact" on the grounds that the Policy, which is a written contract, is the best evidence of the scope of work that Plaintiff insured. ECF No. 87, Ex. 2. The introduction of parol or extrinsic evidence, such as this "fact" to aid in the interpretation of a contract is prohibited, unless the contract is ambiguous—which is it not. *Hashwani*, 822 F2d at 1040. Further, as specifically relevant here, the Policy excludes coverage for defects in workmanship and materials, such as the subject defective concrete. ECF No. 87, Ex. 2 at 35.

Dated: October 18, 2023

Respectfully submitted,

By: /s/ Chad A. Pasternack

John David Dickenson
Florida Bar No. 575801
jdickenson@cozen.com
Chad A. Pasternack
Florida Bar No. 117885
cpasternack@cozen.com
1801 N. Military Trail, Suite 200
Boca Raton, FL 33431
Telephone: (561) 515-5250
Facsimile: (561) 515-5230

Peter N. Billis, Esq. (*pro hac vice*)
pbillis@fgppr.com
**FORAN GLENNON PALANDECH PONZI & RUDLOFF PC**
40 Wall Street, 54th Floor
New York, NY 10005
Phone: (212) 257-7100

Fax: (212) 257-7199

Matthew S. Ponzi, Esq. (*pro hac vice*)
mponzi@fgppr.com
**FORAN GLENNON PALANDECH PONZI & RUDLOFF PC**
222 N. LaSalle Street, Suite 1400
Chicago, IL 60601
Phone: (312) 863-5070
Fax: (312) 863-5099

*Attorneys for ACE American Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of October 2023, a copy of the foregoing was served via email on the following:

Holly A. Rice, Esq.
Sax Doernberger & Vita P.C
999 Vanderbilt Beach Road, Suite 603
Naples, Florida 34108
Tel: (239) 316-7244
hrice@sdvlaw.com

AND

Mr. Jeremiah M. Welch
Ms. Cheryl L. Kozdrey
Sax Doernberger & Vita P.C.
Two BetterWorld Circle
Temecula, CA 92590
Tel: (951) 365-3150
jwelch@sdvlaw.com
ckozdrey@sdvlaw.com

ATTORNEYS FOR PLAINTIFF

By:   /s/  Chad A. Pasternack

John David Dickenson
Florida Bar No. 575801
jdickenson@cozen.com
Chad A. Pasternack
Florida Bar No. 117885
cpasternack@cozen.com
1801 N. Military Trail, Suite 200
Boca Raton, FL 33431
Telephone:  (561) 515-5250
Facsimile:   (561) 515-5230

*Attorneys for ACE American Insurance Company*